**Alvin G. NUNES, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

Civ. No. 85–1306.
Cr. No. 80–00946.

United States District Court, D. Hawaii.

March 18, 1986.

Janet Sherman, Victor Herman, Santa Monica, Cal., for petitioner; Brook Hart, Honolulu, Hawaii, of counsel.

Frank J. Marine, Sp. Atty., Daniel Bent, U.S. Atty., Honolulu, Hawaii, for respondent.

## DECISION AND ORDER

SAMUEL P. KING, Senior District Judge.

An indictment returned on August 15, 1980, charged defendant Alvin G. Nunes with a violation of 18 U.S.C. § 2314 for the interstate transportation of copyrighted motion pictures. In this regard, the indictment reads:

### Count Two

From on or about December 12, 1978 to on or about April 4, 1979, ALVIN G. NUNES, ROBERT M. COURCHESNE and HOWARD G. BITTING, III, aka "Red", defendants herein, did transport and cause to be transported in interstate commerce from Honolulu, Hawaii, in the District of Hawaii, to Miami, Florida, goods, wares, merchandise, that is, video tape cassette copies of duly registered and then copyrighted motion pictures which had been reproduced and sold without the consent of the copyright owner or any agent thereof, having a total value in excess of $5,000, knowing the same to have been stolen, converted and taken by fraud, all in violation of Title 18, United States Code, Section 2314 and Section 2.

On February 2, 1981, Nunes entered a plea of guilty to this and other counts of the indictment. The transcript of the proceedings reflects the following in part as a basis for his plea:

DEFENDANT NUNES: Count 2, I intentionally sold and shipped to Florida from Hawaii stolen property, which was major motion pictures with a value of over $5,000.

The government's version of this matter is set forth in the government's Sentencing Memorandum in the following language:

During this first meeting with defendants Nunes and Courchesne the agent was provided by the defendant [Nunes] with a list of 133 titles of major motion pictures which were available through the defendants.... The undercover agent then placed an order for 160 video cassettes of 24 separate titles for a total purchase price of $7,000. Defendants Nunes and Courchesne displayed their video cassette copying equipment.... Nunes also explained that while the owners of the motion pictures put an electronic block on their films to prevent their unauthorized reproduction he advised "we got 'em beat" with his sophisticated electronic equipment.

... [t]hey discussed the reproduction and sale of pornography as well as pirated motion pictures on video tape cassettes. The defendants copied four copies each of [certain titles] ... which they provided to the undercover agent along with one copy each of [certain other titles]....

Also during this meeting, Courchesne and Nunes discussed with the undercover agent the fact that they had to be careful because the ["feds"] ... were around and that they had been conducting an investigation of pirated motion pictures recently....

On December 12, 1978, the defendants shipped 73 video cassettes of motion pictures which constituted approximately one-half of the agent's first order. After some problems with the reproduction equipment which caused, according to Nunes, several customers to complain that their orders were not being filled. [sic] The defendants shipped the second half of the first order to the undercover agents in Miami on March 14, 1979. The shipment of the cassettes of motion pictures in response to the first order for pirated motion pictures is the basis for Count Two of the indictment which charges Interstate Transportation of Stolen Property.

Nunes was sentenced on March 25, 1981, to incarceration for 10 years on Count 2, 10 years on Count 4 to run consecutively to Count 2, and 5 years on Count 1 to run concurrently with Counts 2 and 4. He was also sentenced on Count 10 to 5 years supervision on probation and to pay a fine of $25,000.

Nunes filed a timely appeal which was later dismissed on his motion for voluntary dismissal. On October 23, 1985, Nunes filed the instant motion pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence as to Count 2. This is his third section 2255 petition.

This latest application was prompted by the Supreme Court's decision on June 28, 1985, in *Dowling v. United States*, — U.S. ——, 105 S.Ct. 3127, 87 L.Ed.2d 152 (1985), that the interstate transportation of "bootleg" uncopyrighted phonorecords of commercially unreleased performances of copyrighted musical compositions which phonorecords were manufactured and distributed without the consent of the copyright owners of the musical compositions performed on the records was *not* a violation of 18 U.S.C. § 2314.

The government has responded in opposition to the motion that (1) *Dowling* has no application to "pirated" recordings, (2) by pleading guilty, Nunes waived all non-jurisdictional challenges to his conviction, (3) this collateral attack requires a threshold showing of "cause" and "prejudice" which petitioner has not met.

## BOOTLEG OR PIRATED

The Supreme Court in *Dowling* defined a "bootleg" phonorecord as a phonorecord which contains an unauthorized copy of a commercially unreleased performance and a "pirated" phonorecord as an unauthorized copy of a performance already commercially released.

The government argues a difference in result under *Dowling* in the application of 18 U.S.C. § 2314 to "pirated" as distinguished from "bootleg" copyrighted material. This argument reads the reported opinion too narrowly.

The Supreme Court read the statutory language that the "goods, wares, merchandise" be "the same" as those "stolen, converted or taken by fraud," as clearly to contemplate a physical identity between the items unlawfully obtained and those eventually transported, and hence some prior physical taking of the subject goods.

The court noted that the government's theory would make theft, conversion, or fraud equivalent to wrongful appropriation of statutorily protected rights in copyright, and that copyright infringement is specifically covered by other criminal statutes.

The reasoning of *Dowling* applies equally to bootleg or to pirated copyrighted material.

## PRIOR PHYSICAL TAKING

What if the copyrighted source material —recording, movie film, whatever—had been "stolen, converted or taken by fraud" before being reproduced or copied? Would unauthorized copies thereof then be "the same" as the source material and within the prohibitions of 18 U.S.C. § 2314?

*Dowling* addresses this possibility in footnote 7.

The Government argues in the alternative that even if the unauthorized use of copyrighted musical compositions does not alone render the phonorecords con-

tained in these shipments "stolen, converted or taken by fraud," the record contains ample evidence establishing that the bootleggers obtained the source material by illicit means....

For several reasons, we decline to consider this alternative basis for upholding Dowling's convictions. The § 2314 counts in the indictment were founded exclusively on the allegations that the shipped phonorecords ... were "stolen, converted and taken by fraud, in that they were manufactured without the consent of the copyright proprietors." ... The decision of the Court of Appeals does not rely on any theory of illegal procurement.... Moreover, even assuming that the stipulated testimony contained sufficient evidence to establish the unlawful procurement of the source material, the Government made no attempt in the District Court to address the difficult problems of valuation under its alternative theory.... [i]ts evidence concerning the value of the interstate shipments of records attempted to isolate the value attributable to the copyrighted musical compositions....

These observations apply to the instant charge against Nunes.

The government argues that there are factual issues that were resolved by Nunes' plea of guilty and that cannot be raised now. Specifically, the government asserts that Count Two could have related to stolen masters which were then copied, and that Nunes by his guilty plea must be considered to have admitted that the copies were made from stolen originals.

The record does not support this approach. Nowhere does it appear how the original films or cassettes were obtained. If anything, the record suggests that original video cassettes were obtained legitimately but copied without authorization. This is precisely the situation discussed in *Dowling.*

## WAIVER AND PREJUDICE

The general rule is that a person's plea of guilty constitutes an admission of the facts necessary for conviction and a waiver of all non-jurisdictional defenses. Here, Nunes does not claim that he did not do the things which the government alleged he had done as a basis for his indictment and plea to Count Two of the indictment. Rather he claims that the conduct for which he was indicted and which he admitted by his plea of guilty does not constitute a violation of 18 U.S.C. § 2314. For this reason, he argues, he cannot be sentenced under that statute regardless of his plea.

In *Davis v. United States,* 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), the Supreme Court made it clear that a person could obtain relief because of an intervening change of law. Davis had been found guilty of violating an induction order issued pursuant to the Selective Service Act. A later decision by the Ninth Circuit Court of Appeals in another case interpreted the Selective Service Act in such a way that Davis' induction order would, under the new interpretation, be invalid. The Court held that Davis' "conviction and punishment are for an act that the law does not make criminal. There can be no room for doubt that such a circumstance 'inherently results in a complete miscarriage of justice' and 'present[s] exceptional circumstances' that justify collateral relief under § 2255." *Id.* at 346–47, 94 S.Ct. at 2305.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that the sentence of ten (10) years heretofore imposed upon ALVIN G. NUNES as a result of his plea of guilty to Count Two for a violation of 18 U.S.C. § 2314 is HEREBY VACATED, and

IT IS FURTHER ORDERED that the plea of guilty heretofore entered by ALVIN G. NUNES to said Count Two is HEREBY SET ASIDE, and

IT IS FURTHER ORDERED that, the Statute of Limitations having run on any amended charge under 18 U.S.C. § 2314 arising out of the conduct alleged in the indictment, said Count Two is HEREBY DISMISSED.